Richard D. McCune, State Bar No. 132124
rdm@mccunewright.com
Jae (Eddie) K. Kim, State Bar No. 236805
jkk@mccunewright.com
**McCUNEWRIGHT LLP**
2068 Orange Tree Lane, Suite 216
Redlands, California  92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

Taras Kick, State Bar No. 143379
taras@kicklawfirm.com
James Strenio, State Bar No. 177624
Thomas A. Segal, State Bar No. 222791
thomas@kicklawfirm.com
**THE KICK LAW FIRM, APC**
201 Wilshire Boulevard
Santa Monica, California 90401
Telephone:   (310) 395-2988
Facsimile:    (310) 395-2088

Attorneys for Plaintiff Mary Gray and the Putative Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY GRAY, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES FEDERAL CREDIT UNION, and DOES 1-10,<br><br>Defendants. | **Case No.:  2:15-cv-07266**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) Violation of Electronic Funds Transfer Act**<br>**(2) Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200);**<br>**(3) Breach of Contract;**<br>**(4) Unjust Enrichment/Restitution;**<br>**(5) Money Had And Received;**<br>**(6) Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

CLASS ACTION: COMPLAINT

Plaintiff Mary Gray ("Plaintiff"), by her attorneys, hereby brings this class and representative action against Los Angeles Federal Credit Union ("LAFCU" or "Defendant") and DOES 1-10.  All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or her counsel, which are based on personal knowledge.  Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys.  Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1. This is a class and representative action brought by Plaintiff to assert claims in her own right, in her capacity as the class representative of all others similarly situated, and in her representative capacity as a private attorney general on behalf of the members of the general public.  This class action seeks monetary damages, restitution, punitive damages, and injunctive relief against Defendant LAFCU arising from LAFCU's practice of charging of improper overdraft fees barred by federal regulation and/or the terms of its account agreement with its credit union members.  Specifically, Plaintiff asserts that LAFCU's process for opting credit union members into its overdraft program failed to comply with 12 C.F.R. § 1005.17 which requires that customers be provided the amount of the overdraft fee on the same form that they use to opt in to the program. LAFCU's Opt In form does not inform customers of the amount that LAFCU charges as an overdraft fee.  LAFCU also charged overdraft fees for transactions for which there was money in the checking account to cover the transactions, thereby breaching the express terms of its consumer contract.

## VENUE AND JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  This Court also has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Jurisdiction is proper because (1) the claims of plaintiffs, aggregated together, exceed $5,000,000; and (2) some putative class members are citizens of different states than the

CLASS ACTION: COMPLAINT

1  defendant.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because at the time of the
2  transaction giving rise to this lawsuit, Defendant was a resident of the Central District
3  (Los Angeles County).

## PARTIES

5      3.      Plaintiff is a resident of Los Angeles County, California, and at all times
6  relevant herein, maintained her LAFCU personal consumer checking and savings account
7  at a branch in Los Angeles, California, located in Los Angeles County.
8      4.      Based on belief, Defendant LAFCU is a federally chartered credit union
9  with its headquarters in Los Angeles California.
10     5.      The true names and capacities, whether individual, corporate, associate, or
11 otherwise, of the defendants sued herein as DOES 1 through 10 inclusive, are unknown to
12 Plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will
13 amend this complaint to insert the true names and capacities of these defendants when the
14 same have been discovered.  Each of the defendants designated herein as a "DOE" is
15 legally responsible in some manner for the conduct alleged herein.
16     6.      There exists, and at all times herein mentioned, existed, a unity of interest
17 and ownership between the named defendants (including DOES) such that any corporate
18 individuality and separateness between the named defendants has ceased, and that the
19 named defendants are alter egos in that the named defendants effectively operate as a
20 single enterprise, or are mere instrumentalities of one another.
21     7.      At all material times herein, each defendant was the agent, servant, co-
22 conspirator and/or employer of each of the remaining defendants, acted within the
23 purpose, scope, and course of said agency, service, conspiracy and/or employment and
24 with the express and/or implied knowledge, permission, and consent of the remaining
25 defendants, and ratified and approved the acts of the other defendants.  However, each of
26 these allegations are deemed alternative theories whenever not doing so would result in a
27 contradiction with the other allegations.
28     8.      Whenever in the complaint reference is made to any act, deed, or conduct of

CLASS ACTION: COMPLAINT

a defendant corporation, the allegation means the defendant corporation engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the defendant corporation's ordinary business and affairs. (Doe Defendants are collectively referred to herein and are included in the term "Defendant.")

9. As to the conduct alleged herein each act was authorized ratified or directed by Defendants' officers, directors, or managing agents.

## FACTUAL ALLEGATIONS

**A. LAFCU's Unlawful Overdraft Program**

10. LAFCU is a Southern California-based credit union that provides banking services in Los Angeles County, California through its 8 branches. One of the services offered by LAFCU to consumer banking customers is a checking account. One of the benefits LAFCU offers with a checking account is a debit card that can be used for a variety of transactions including buying goods and services, as well as the ability to write checks, withdraw from ATM machines, schedule ACH (Automated Clearing House transactions) such as certain recurring payments, and other type of transaction items that debit from the checking account. In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), LAFCU charges overdraft fees when it determines there are insufficient funds in the account.

11. Credit Unions have increasingly turned to overdraft fees as a substantial source of income. According to the June 11, 2013 report entitled CFPB Study of Overdraft Programs[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14). That reflects an increase of 15% in overdraft fees from 2007 to 2012 (p. 16). Overdraft and NSF fees now generate over 50% of all fees, and constitute 11.6% of net income (p. 15) for credit unions.

12. The high cost of an overdraft fee is usually unfairly punitive. In a 2012

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

-4-

CLASS ACTION: COMPLAINT

study, more than 90% of customers who were assessed overdraft fees overdrafted their account by mistake.  (May 2012 Pew Charitable Trust report entitled "Overdraft America:  Confusion and Concerns about Bank Practices", p.4.)  More than 60% of the transactions that resulted in a large overdraft fee were for less than $50.  (June 2014 Pew Charitable Trust report entitled "Overdrawn", p.8).  More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*Id.*, p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee. (*Id.*, p. 10).

13.   Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and nonwhite account holders are among those who were more likely to be assessed overdraft fees.  (*Id.*, p.1).  A 25 year old is 133% more likely to pay an overdraft penalty fee than a 65 year old.  (*Id.*, p.3).  More than 50% of the customers assessed overdraft fees earned under $40,000 per year.  (*Id.*, p.4).  Nonwhites are 83% more likely to pay an overdraft fee than whites.  (*Id.*, p.3).

14.   In reaction to banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees, using methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues have occurred over the past few years.  The results of this litigation include a trial verdict in California and nationwide settlements wherein banks and credit unions have been ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of dollars as well as changes in their overdraft practices.

15.   Furthermore, the federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies.  In 2010, the Federal Reserve Board enacted regulation that financial institutions were only permitted to charge overdraft fees on ATM and one-time debit card charges if they obtained the affirmative consent of the customer. 12 C.F.R. § 1005.17 ("Opt In Rule").

16. To qualify as affirmative consent, the opt-in notice must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft (12 C.F.R. § 1005.17(d)(1)&(2));
- The opt-in consent must be obtained separately from other consents and acknowledgements;
- The consent cannot serve any purpose other than opting into the overdraft program;
- The consent cannot be a pre-selected checked box;
- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

17. In addition the opt-in notice must be segregated from other information that the financial institution provides to its account holders, and must state the dollar amount of the overdraft fees that are charged under the program.

18. If the financial institution did not obtain proper affirmative consent from the consumer that meets all of the requirements of the Opt in Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

19. To ensure that there was no misunderstanding about the requirements of the opt-in agreement, including the requirement for specifically listing the amount of the overdraft fee in the opt-in agreement, the Rules and Regulations included a Model of an approved opt-in agreement. (*See,* Exhibit 1 attached, Federal Register, Vol. 74, No. 220, p. 59054.) That model opt-in agreement of course included the required dollar amount of each overdraft fee.

20. LAFCU elected to not provide credit union members the dollar amount of the overdraft fee in its opt-in agreement, despite the clear language of the regulation coupled with a model form, that could leave no doubt of the requirement to do so. As can

CLASS ACTION: COMPLAINT

be seen in the opt-in agreement attached hereto as Exhibit 2 (Los Angeles Federal Credit Union's online Overdraft Opt-in Agreement ("LAFCU's Overdraft Opt-in Agreement")), LAFCU used virtually word for word the language of the model opt-in form, but instead of listing the overdraft fee in the document as required, referenced some other document for information on the amount of the fee. This violation of 12 C.F.R. § 1005.17 (d)(2) makes inoperative the opt-in consent, and LAFCU was not permitted to assess overdraft fees on non-recurring debit card and ATM transactions without opt-in agreements.

21.     In addition to the violation of Regulation E, for all times relevant to this complaint, LAFCU has had an overdraft program (entitled "Courtesy Pay") in place for assessing overdraft fees on certain transaction which is contrary to the express terms of its contracts with members, contrary to how LAFCU represents its overdraft program to its members, and contrary to what consumers would expect as to when they would be assessed overdraft fees.

22.     LAFCU contracts with its members regarding the circumstances in which debit card and ATM transactions will be considered an overdraft triggering an overdraft fee:

> "An overdraft occurs when you do not have enough money in your account to cover a transaction, but Los Angeles Federal Credit Union (LAFCU) pays it for you."

(Ex. 2, LAFCU's Overdraft Opt-in Agreement)

23.     Based on information and belief, LAFCU's contractual promise to only charge overdraft fees when there is not enough money in the account to pay the item, was also provided to customers in other disclosures and marketing materials it provided to customers.

24.     However, contrary to the opt-in agreement that LAFCU will only charge overdraft fees when there is not enough money in the checking account, LAFCU's practice when assessing an overdraft fee on a transaction is to ignore whether there is

enough money to pay the transactions, and instead makes the automated decision on assessing overdraft fees based on an artificial internal balance (available balance) rather than the actual balance.  While the available balance may be used for determining whether to authorize the transaction, it is directly contrary to the language in the contract and other materials to use it for purposes of assessing overdraft fees.  The result is that LAFCU improperly charges members overdraft fees even when there is money in the account to pay the items.

**B.     Unlawful Overdraft Fees Assessed to Plaintiff Mary Gray**

25.     Plaintiff has been charged multiple overdraft fees on debit card transactions despite the fact that LAFCU did not obtain the affirmative consent required by 12 C.F.R. § 1005.17 in order to assess overdraft fees on these transactions.  That includes a $26 overdraft fee on a $2.99 debit card transaction on December 31, 2013, and a $25 overdraft fee on a $26.63 debit card transaction on December 31, 2012.  A complete evaluation of LAFCU's records is necessary to determine the full extent of Plaintiff's harm from this practice.

26.     Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23.

28.     The "Class" is composed of:  **All persons who have or have had accounts with LAFCU who incurred overdraft fees for ATM and non-recurring debit card transactions from either September 15, 2011 to the present, or alternatively from September 16, 2011 to the date LAFCU implemented a valid and binding arbitration provision.**

29.     Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

CLASS ACTION: COMPLAINT

30. The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is unknown to Plaintiff at this time and can be determined only by appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

31. Membership in the Class is ascertainable. Upon information and belief, Defendant retains the databases, or other documentation, of transactions and account enrollment which will be analyzed by an expert to ascertain all members of the Class who have been harmed by the practice. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

32. Common questions of law or fact predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class members include, among others, the following:

    a. Whether Defendant utilized a standardized Opt-In Agreement;

    b. Whether Defendant's standardized Opt-In Agreement violated 12 C.F.R. § 1005.17;

    c. Whether the automated process utilized by LAFCU to assess overdraft fees based on "available balance" was in conflict with and breach of the Opt-In Agreement that states an overdraft is when there in not enough money in the account to cover the transaction, but LAFCU pays it for the customer;

    d. Whether Defendant's conduct violated state consumer protection laws.

33. Plaintiff's claims are typical of all of the members of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct are

substantially the same for Plaintiff and all of the Class members.

34. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. Plaintiff and her counsel intend to prosecute this action vigorously.

35. The class action is superior to all other available methods for the fair and efficient adjudication of this case or controversy. Because the injury suffered by the Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and Class members individually to seek redress for the alleged wrongful conduct. Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed. The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

## FIRST CAUSE OF ACTION

**(For Violation of Electronic Funds Transfer Act)**

36. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

CLASS ACTION: COMPLAINT

37. Defendant's opt-in form did not state the dollar amount of the overdraft fees as required by 24 C.F.R. § 1005.17, and therefore, fees charged pursuant to the opt-in form were unlawfully assessed.

38. Because of Defendant's failure to comply with 12 C.F.R. § 1005.17 they are liable for actual and statutory damages, as well as attorney fees and costs of suit pursuant to 12 U.S.C. § 1693m.

## SECOND CAUSE OF ACTION

**(For Violation California Business & Professions Code §§ 17200, *et seq.*)**

39. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

40. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code§§ 17200, *et seq.*, defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

41. Plaintiff, who has suffered injury in fact and has lost money or property as a result of Defendant's violations of the UCL, alleges this cause of action as a class action and as a private attorney general on behalf of the members of the general public.

42. Defendant has engaged and continues to engage in a general business practice whereby LAFCU unlawfully charges overdraft fees for ATM and debit card transactions despite not obtaining the affirmative consent required by 12 C.F.R. § 1005.17(d)(1)&(2).

43. Defendant's practices are unlawful in that they violate 12 C.F.R. § 1005.17(d)(1)&(2).

44. By reason of the foregoing, Defendant has been improperly and unjustly enriched to the detriment of Plaintiff and the Class members in an amount to be proven at trial.  Plaintiff and the Class members are entitled to have Defendant disgorge and restore to Plaintiff and the Class members all monies wrongfully obtained by Defendant as a result of its conduct as alleged herein.

45. Unless Defendant is enjoined from continuing to engage in this business practice, Plaintiff and the Class members will continue to be injured by Defendant's wrongful actions and conduct. Therefore, Plaintiff and the Class members are entitled to injunctive relief.

## THIRD CAUSE OF ACTION

### (For Breach of Contract)

46. The preceding allegation are incorporated by reference and realleged as if fully set forth herein.

47. Plaintiff and each of the Class members signed or agreed to an opt-in agreement covering the subject of overdraft transactions, which was drafted by and is binding on Defendant.

48. This contract authorizes Defendant to assess overdraft fees only for transactions where there is enough money in the account to cover the transaction.

49. In addition, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

50. The material terms of the contract also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

51. Plaintiff and the Class members have performed all conditions, covenants,

-12-
CLASS ACTION: COMPLAINT

and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

52. Defendant breached the expressed terms of the contract by, inter alia, charging overdraft fees on transactions when there was enough money in the account to cover the transaction.

53. Alternatively, Defendant breached the implied covenant of good faith and fair dealing based on this practice.

54. As a proximate result of Defendant's breach of the contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## FOURTH CAUSE OF ACTION
### (For Unjust Enrichment/Restitution)

55. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

56. Defendant received millions of dollars as a result of the wrongful and unjust misconduct alleged above.

57. As a result, Plaintiff and the Class members have conferred a benefit on Defendant. Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred. Defendant will be unjustly enriched should it be allowed to retain such funds.

## FIFTH CAUSE OF ACTION
### (For Money Had and Received)

58. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

59. Defendant has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of

law and/or fact.

60. As a result, Defendant has in its possession money which in equity belongs to Plaintiff and the Class members which should be refunded to Plaintiff and the Class members.

## SIXTH CAUSE OF ACTION
### (Negligence)

61. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

62. As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (*See* Civ. Code § 1714.) Defendant, and Does 1 through 10, had and continue to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment though its own wrongful acts. Specifically, Defendant, and Does 1 through 10, owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions when there was money in the account to cover the transaction.

63. Defendant, and Does 1 through 10, breached this duty by unreasonably mishandling the accounts of Plaintiff and the Class members by taking funds from Plaintiff and the Class members by assessing overdraft fees for transactions when fees should not have been charged.

64. As a proximate result of Defendants' negligence, Plaintiff and each class member has been damaged in an amount to be proven at trial.

## PRAYER

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For compensatory damages on all applicable claims and in an amount to be proven at trial;

3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

CLASS ACTION: COMPLAINT

4. For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there was money in the account to cover the transaction, and providing accurate and reliable information regarding the overdraft practice;

5. For costs;

6. For interest;

7. For attorneys' fees under California Code of Civil Procedure section 1021.5, the common fund doctrine other applicable law, and the customer account agreement;

8. For such other relief as the Court deems just and proper.

DATED: September 16, 2015                MCCUNEWRIGHT LLP

                                         BY:  /s/*Richard. D. McCune*
                                              Richard D. McCune
                                              Jae (Eddie) K. Kim

                                              THE KICK LAW FIRM, APC
                                              Taras Kick
                                              James Strenio
                                              Thomas A. Segal

                                              *Attorneys for Plaintiff*
                                              *Mary Gray and the Putative Class*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: September 16, 2015                MCCUNEWRIGHT LLP

                                         BY:  /s/*Richard. D. McCune*
                                              Richard D. McCune
                                              Jae (Eddie) K. Kim

                                              THE KICK LAW FIRM, APC
                                              Taras Kick
                                              James Strenio
                                              Thomas A. Segal

                                              *Attorneys for Plaintiff*
                                              *Mary Gray and the Putative Class*

CLASS ACTION: COMPLAINT